UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRADLEY BEATTY,

    Plaintiff,

v.   Case No: 2:15-cv-607-FtM-38CM

UNITED PARCEL SERVICE, INC.,

    Defendant.

_____/

## **ORDER**[1]

This matter comes before the Court on Defendant United Parcel Service, Inc.'s Motion to Dismiss Counts III, IV, and V of Plaintiff's Amended Complaint dated January 27, 2016.  (Doc. #29).  Plaintiff Bradley Beatty filed an Opposition to Defendant's Motion to Dismiss on February 12, 2016.  (Doc. #31).  This matter is ripe for review.

## **BACKGROUND**

This case arises from Plaintiff's former employment as a package driver with Defendant.  He began working for Defendant in September 1999, and has since been a member of Local 79 of the International Teamster's Union (the "Union").  (Doc. #26 at ¶¶ 12-13).  At all times relevant, Michael G. Boeschen served as the Union's shop steward.  (*Id.* at ¶¶ 8-9).

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

After ten years in Defendant's employ, Plaintiff's daughter was born with a disability that required intensive medical treatment and around-the-clock nursing care. (*Id.* at ¶¶ 12, 16-20). For three years following his daughter's birth, Plaintiff took intermittent leave under the Family and Medical Leave Act ("FMLA") to care for her. (*Id.* at ¶¶ 25, 112, 115). According to Plaintiff, his supervisors – Brian Conner, Robert Woodmansee, Michael Compton, and Shawn Bonaberger – resented his need to take FMLA leave. Plaintiff contends that their resentment grew to the point where they harassed him in a calculated effort to force his resignation. (*Id.* at ¶¶ 35-37, 43-47, 49-54). Plaintiff's purported evidence of their harassment is as follows:

First, sometime in late 2011, Plaintiff physically collapsed mid-shift because of emotional exhaustion. (*Id.* at ¶ 49). A few weeks later, he notified Defendant that his daughter needed yet another surgery. (*Id.* at ¶ 50). In response, Woodmansee and Compton assigned Plaintiff fifty additional delivery stops. (*Id.* at ¶¶ 51-52). When Plaintiff could not finish the additional stops, he drove his truck back to Defendant's customer center. (*Id.* at ¶¶ 53-54). There, Bonaberger greeted Plaintiff by telling him that bets had been made as to whether he would complete the additional stops. (*Id.*). Someone also told Plaintiff that he would be fired if he left work and that he had to choose between his job and his daughter. (*Id.* at ¶ 54).

Afterwards, Plaintiff contacted Linda Pallegrini, a member of Defendant's Human Resources department, to "complain[] about the continued mistreatment and the effort to break him because of his daughter's disability and his prior absences from work to care [for] his daughter which were FMLA-qualifying." (*Id.* at ¶ 55). Pallegrini allegedly told Plaintiff not to "pick on" Woodmansee. (*Id.*). Unsuccessful with Pallegrini, Plaintiff also

reported the alleged FMLA violations to the Union's shop steward, who told Plaintiff to return to work the next day. (Id. at ¶¶ 8, 56). Plaintiff complied but Woodmansee, Compton, and Bonaberger continued to give him unrealistic assignments. (Id. at ¶ 59).

Second, sometime in 2012, Plaintiff requested time off to bring his daughter to a medical appointment. (Id. at ¶ 60). Compton allegedly said that he "did not deserve FMLA leave" and that he "already had enough time off." (Id. at ¶ 61). Although Plaintiff had not exceeded the allotted leave available to him under the FMLA, he was denied the time. (Id. at ¶¶ 61-62). He also learned that he could not take time off to bring his daughter to appointments between November 2012 and April 2013 because it was Defendant's "season rush." (Id. at ¶¶ 63-64).

Third, sometime in 2012, Plaintiff sought a promotion to a more senior position but Woodmansee and Compton allegedly promoted several drivers with less experience. (Id. at ¶ 65). According to Plaintiff, Woodmansee told him that he "would never be promoted because [he] had a handicapped daughter." (Id. at ¶ 66). Although not entirely clear from the existing record, it appears that Plaintiff complained to Defendant's HR department regarding this incident sometime during the summer of 2012. (Id. at ¶ 67). An investigation ensued, but Defendant apparently took no corrective action. (Id. at ¶¶ 68-71).

Fourth, in June 2013, Plaintiff learned that his daughter struggled to breathe and promptly notified his district manager that he needed time to care for her. (Id. at ¶ 76). The manager granted his request but instructed Plaintiff to notify Woodmansee, which he admittedly did not do. (Id. at ¶ 77). When Plaintiff returned to work the next morning, Woodmansee fired him. (Id. at ¶ 78). A few days later, Woodmansee expressed doubt

as to the validity of Plaintiff's FMLA leave requests and directed Plaintiff to submit medical records to prove his daughter's condition. (*Id.* at ¶¶ 80-81). Plaintiff refused to do so believing the directive violated the FMLA. (*Id.* at ¶¶ 81-82).

Fifth, in October 2013, Plaintiff learned that Woodmansee, Compton, and Boeschen spoke to his ex-wife about their daughter's health. (*Id.* at ¶¶ 91-92). Plaintiff's ex-wife apparently said their daughter was healthy and that Plaintiff "was fraudulently seeking FMLA protection." (*Id.* at ¶¶ 91-96). Plaintiff then refused to answer Boeschen's questions about his daughter's condition. (*Id.* at ¶¶ 96-98).

On October 25, 2015, Plaintiff took FMLA leave for his own serious medical condition. (*Id.* at ¶¶ 100, 106). About one month later, Plaintiff received a final warning from Defendant that indicated he would be fired if he did not contact his supervisor within 48 hours. (*Id.* at ¶ 105). Plaintiff then contacted Compton to advise about his leave of absence. (*Id.* at ¶ 107). Nevertheless, Defendant fired Plaintiff on December 4, 2013, for failing to contact his supervisor. (*Id.*).

On August 12, 2015, Plaintiff commenced this suit in the Circuit Court for the Twentieth Judicial Circuit in and for Charlotte County, alleging Defendant discriminated and retaliated against him because of his daughter's disability in violation of the FMLA and the Florida Civil Rights Act ("FCRA"). (Doc. #2). Defendant timely removed the case to this Court under 28 U.S.C. § 1331. (Doc. #1). Defendant thereafter filed a partial motion to dismiss (Doc. #2), which the Court granted because the FCRA does not recognize associational disability discrimination and retaliation claims (Doc. #20). However, the Court allowed Plaintiff leave to amend the Complaint in order to raise these

claims under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12112, which was the appropriate statute. (Doc. #20 at 4-6).

Plaintiff filed his Amended Complaint on January 13, 2016. (Doc. #26). The crux of this case remains that Defendant resented Plaintiff's need to take FMLA leave to care for his disabled daughter and that he was fired because of this animosity. (Id. at ¶¶ 23-24, 29, 35). From that basis, Plaintiff asserts five causes of action under the FMLA, FCRA, and Florida Whistleblower Act ("FWA"), Fla. Stat. § 448.102(3). Counts I though IV are identical to the original Complaint, whereas Count V is new. Counts I and II again allege that Defendant violated the FMLA by interfering with his rights to leave and retaliating against him for taking leave. Count III similarly re-alleges that Defendant discriminated against him because of his daughter's disability in violation of the FCRA. Count IV asserts that Defendant retaliated against him because he opposed disability discrimination and requested leave to care for himself and his daughter in violation of the FCRA. Finally, Count V maintains that Defendant harassed, retaliated, and fired him for whistleblowing activity in violation of the FWA. (Doc. #26 at ¶ 126). Defendant now moves to dismiss Counts III, IV, and V of the Amended Complaint. (Doc. #29).

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the reviewing court must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This preferential standard of review, however, does not permit all pleadings adorned with facts to survive to the next stage of litigation. The Supreme Court has been clear on this point – a district court should dismiss a claim where a party fails to

claims under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12112, which was the appropriate statute. (Doc. #20 at 4-6).

Plaintiff filed his Amended Complaint on January 13, 2016. (Doc. #26). The crux of this case remains that Defendant resented Plaintiff's need to take FMLA leave to care for his disabled daughter and that he was fired because of this animosity. (Id. at ¶¶ 23-24, 29, 35). From that basis, Plaintiff asserts five causes of action under the FMLA, FCRA, and Florida Whistleblower Act ("FWA"), Fla. Stat. § 448.102(3). Counts I though IV are identical to the original Complaint, whereas Count V is new. Counts I and II again allege that Defendant violated the FMLA by interfering with his rights to leave and retaliating against him for taking leave. Count III similarly re-alleges that Defendant discriminated against him because of his daughter's disability in violation of the FCRA. Count IV asserts that Defendant retaliated against him because he opposed disability discrimination and requested leave to care for himself and his daughter in violation of the FCRA. Finally, Count V maintains that Defendant harassed, retaliated, and fired him for whistleblowing activity in violation of the FWA. (Doc. #26 at ¶ 126). Defendant now moves to dismiss Counts III, IV, and V of the Amended Complaint. (Doc. #29).

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the reviewing court must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This preferential standard of review, however, does not permit all pleadings adorned with facts to survive to the next stage of litigation. The Supreme Court has been clear on this point – a district court should dismiss a claim where a party fails to

plead facts that make the claim facially plausible. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible when the court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. See Iqbal, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 557 (internal quotation marks omitted)).

## DISCUSSION

### A. Count III – Associational Disability Discrimination Under the FCRA

Count III of the Amended Complaint is identical to its predecessor. Both versions allege that Defendant discriminated against Plaintiff because of his daughter's disability in violation of the FCRA. According to Plaintiff, he re-alleged Count III under the FCRA, and not the ADA as the Court suggested, because of a procedural bar. Plaintiff admittedly commenced this case more than ninety (90) days after he received a "Notice-of-Right-to Sue" letter from the United States Equal Employment Opportunity Commission; and, once that 90-day period expired, he lost the right to sue Defendant based on an associational disability discrimination claim under the ADA. (Doc. #24). Consequently, Defendant again moves to dismiss Count III. Plaintiff does not oppose the dismissal; but rather, responds that he re-alleged an associational disability discrimination claim under the FCRA to preserve his right to appeal. (Doc. #31 at 1-2).

Because this Court previously found the FCRA does not recognize a claim for associational disability discrimination and because Plaintiff is procedurally barred from asserting such a claim under the ADA, the Court dismisses Count III of the Amended Complaint with prejudice.

**B. Count IV – Retaliation Under the FCRA**

Count IV of the Amended Complaint is also identical to its predecessor. Both versions allege that Defendant retaliated against Plaintiff for "opposing disability discrimination" and "requesting one or more periods of leave in order to care for himself and his daughter" under the FCRA. (Doc. #26 at ¶ 128). Defendant moves to dismiss Count IV, arguing that Plaintiff has not shown that he engaged in statutorily protected activity, the first element to a retaliation claim, because the FCRA does not recognize associational disability discrimination. (Doc. #29 at 5-6). Plaintiff does not argue the contrary; but rather, states that he re-alleged this claim under the FCRA, and not the ADA, to preserve his right to appeal. (Doc. #31 at 1-2).

The FCRA prohibits an employer from retaliating "against any person because that person has opposed any practice which is an unlawful employment practice under [the FCRA]." Fla. Stat. § 760.10(7). Pertinent here, the FCRA makes it unlawful for an employer to fire or otherwise discriminate against any individual because of his/her handicap. Fla. Stat. § 760.10(1)(a). Where there is no direct evidence of retaliation, as in this case, courts apply the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973). See *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). First, the employee must establish a *prima facie* case of retaliation by showing (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. See *Lucas v. W.W. Grainger*, 257 F.3d 1249, 1260 (11th Cir. 2001). Once a plaintiff establishes a *prima facie* case of retaliation, the employer has an opportunity to articulate a non-retaliatory reason for its action, which the employee can

7

rebut by evidence of pretext. See *Brown,* 597 F.3d at 1181-82. The first element of Plaintiff's *prima facie* case is at issue in the instant motion.

Even viewing the facts in a light most favorable to Plaintiff, he has not engaged in statutorily protected activity. In the three years following his daughter's disability, Plaintiff avers that he complained about FMLA violations and discrimination because of his daughter's condition. Although Plaintiff raises serious issues with his superiors' treatment of him, he did not actually oppose any unlawful employment practice *under the FCRA*. Remember, the FCRA makes it unlawful for an employer to discriminate against any individual because of his/her handicap – it does not contemplate FMLA violations and associational disability discrimination. Fla. Stat. § 760.10(1)(a). Plaintiff's complaints here support an FMLA retaliation claim, which he asserts in Count II of the Amended Complaint. Moreover, to the extent that Plaintiff bases the FCRA retaliation claim on requesting one or more periods of leave in order to care for *himself*, he does so without sufficient specificity to state a plausible claim under the FCRA. Accordingly, the Court dismisses Count IV of the Amended Complaint with prejudice.

**C. Count V – FWA**

Plaintiff brings Count V of the Amended Complaint under the FWA, which states, in pertinent part, "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). Plaintiff now asserts, for the first time, that he was "harassed, retaliated against and ultimately discharged in retaliation for protected whistleblowing activity[.]" (Doc. #26 at ¶¶ 131-32). In response, Defendant moves to dismiss because

(1) the FWA's two-year statute of limitations bars the claim; and (2) he failed to plead a *prima facie* case of retaliation sufficiently.  (Doc. #29 at 6-11).  The Court will address each argument in turn.

    1.  *Statute of limitations*

The FWA provides that an employee may bring an action "within 2 years after discovering that the alleged retaliatory personnel action was taken[.]"  Fla. Stat. § 448.103.  Here, Defendant fired Plaintiff on December 4, 2013, meaning he was required to file an FWA claim on or before December 3, 2015.  (Doc. #26 at ¶ 106).  Plaintiff initiated this suit in state court on August 12, 2015, but he filed the Amended Complaint – where the FWA claim was first alleged – on January 13, 2016.  (*Compare* Doc. #2, *with* Doc. #26).  According to Defendant, Plaintiff first asserted the FWA claim outside the two-year limitations period.  Plaintiff counters that his FWA claim "relates back" to the original complaint because it arises out of the same conduct as the other counts.  The issue before the Court, therefore, is whether the FWA claim "relates back" to the original complaint, because, if not, the claim is time barred.

Rule 15(c) of the Federal Rules of Civil Procedure governs the "relation back of amendments," or the circumstances in which an amendment will be treated as though it was filed on the date of the original pleading.  Fed. R. Civ. P. 15(c).  "An amendment of a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).  If the new claims relate back to the original claims, the court considers the new claims as having been filed at the time of the original complaint.  *See Brewer-Giorgio v. Producers*

*Video, Inc.*, 216 F.3d 1281, 1285 (11th Cir. 2000). "Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence.'" *Mayle v. Felix*, 545 U.S. 644, 655 (2005). The Supreme Court has held that amendments can relate back, and therefore avoid a statute of limitations bar, "even though the amendment invoked a legal theory not suggested by the original complaint and relied on facts not originally asserted." *Id.* (citation omitted). "[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659 (citations omitted).

Here, the Court has little trouble finding that the FWA claim relates back to the original complaint. Since day one of this suit, Plaintiff has challenged Defendant interfering with his FMLA leave and discriminating against him because of his daughter's disability, as well as Defendant's decision to fire him for opposing said interference and discrimination. Simply, Count V alleges retaliatory discharge as do the other counts. Having overcome the two-year statute of limitations, the Court turns now to Plaintiff's *prima facie* case of retaliation under the FWA.

2. *Plaintiff's Prima Facie Case of Retaliation*

The FWA prohibits an employer from retaliating against an employee who objected to any unlawful activity, policy, or practice of the employer. *See* Fla. Stat. § 448.102(3). In analyzing retaliation claims under the FWA, a court must apply the *McDonnell Douglas* burden-shifting framework already discussed. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000).[2] To recapitulate, a plaintiff must first establish a

---

[2] Although the court in *Sierminski* acknowledged that it found the *McDonnell Douglas* framework applicable to FWA claims only because there was no guiding case law from Florida, at least one Florida appellate

10

*prima facie* case of retaliation, which requires a showing that (1) the plaintiff engaged in protected activity; (2) he subsequently suffered an adverse employment action by the defendant; and (3) a causal connection existed between the plaintiff's activity and the defendant's adverse action. See *Rutledge v. SunTrust Bank,* 262 F. App'x 956, 958 (11th Cir. 2008). Once a plaintiff establishes a *prima facie* case, the employer may articulate a non-retaliatory reason for its action, which the employee can rebut by evidence of pretext. See *Brown,* 597 F.3d at 1181-82. The first and third elements of Plaintiff's *prima facie* case are at issue here.

To establish the first element, the plaintiff must allege that he "objected to or refused to participate in (i) an illegal activity, policy, or practice of an employer, (ii) illegal activity of anyone acting within the legitimate scope of their employment, or (iii) illegal activity of an employee that has been ratified by the employer." *McIntyre v. Delhaize Am., Inc.,* No. 8:07-cv-2371-T-30TBM, 2009 WL 1039557, at *3 (M.D. Fla. Apr.17, 2009), *aff'd,* 403 F. App'x 448 (11th Cir. 2010). Defendant argues that Plaintiff does not allege with the requisite specificity that he engaged in any statutorily protected activity. (Doc. #29 at 8-9).

Defendant specifically takes issue with having to "guess upon which of the 100 paragraphs of allegations contained in the Amended Complaint, Plaintiff is supposedly basing his FWA claim." (Doc. #29 at 9). However, Plaintiff counters that the Amended Complaint "is a model of specificity" and that he "should not have to write an appellate brief in response to a 'specificity' argument that is unsupported by any case law." (Doc. #31 at 5). The Court agrees with Plaintiff. Viewing the facts in a light most favorable to

---

court has since endorsed use of that framework for FWA claims. See *Rustowicz v. N. Broward Hosp. Dist.,* 174 So. 3d 414, 419 (Fla. 4th DCA 2015).

Plaintiff, he has sufficiently pled that he opposed Defendant's alleged practice of interfering with his FMLA rights and discriminating against him because of his daughter's disability during the years following his daughter's birth. The Amended Complaint is replete with instances in which Plaintiff engaged in protected activity to satisfy the first element of his *prima facie* case.

Turning to the third element, Defendant argues that Plaintiff fails to link his supposed statutorily protected expression to his discharge on December 4, 2013. (Doc. #29 at 9). The causation requirement is "broadly construed," and a plaintiff may establish a *prima facie* case for retaliation so long as the protected activity and the adverse employment action are not completely unrelated. See *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001). Causation may be established by temporal proximity, *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004), as well as by showing that an employer knew of a protected activity and adverse employment actions commenced shortly thereafter, *Jiles v. United Parcel Serv., Inc.,* 360 F. App'x 61, 66 (11th Cir. 2010).

According to Defendant, Plaintiff does not allege that any person to whom he complained was involved in the decision to fire him or that the person who did fire him was aware of his prior complaints. It also argues that Plaintiff's complaints in 2012 and 2013 are too far removed from his firing on December 4, 2013, to show a close temporal proximity. (Doc. #29 at 10). For whatever reason, Plaintiff does not offer any substantive response to Defendant's argument beyond reiterating standard language from the case law. (Doc. #31 at 7). Nevertheless, the Court sides with Plaintiff.

Taking as true the facts in the Amended Complaint, it is clear that Plaintiff opposed Defendant's interference with his FMLA rights and his supervisors were aware of his opposition.  In addition, Plaintiff took FMLA leave for his own medical condition on or about October 25, 2013, and approximately six weeks later, Defendant fired him for failing to contact his supervisor.  Coupling this timing with Defendant's ongoing opposition the three years prior, there is a sufficient causal connection, at this stage, to satisfy the third element of Plaintiff's *prima facie* case.  All and all, the Court finds that Count V will best be left for resolution after development of the facts through discovery.

Accordingly, it is now

**ORDERED:**

Defendant United Parcel Service, Inc.'s Motion to Dismiss Counts III, IV, and V of Plaintiff's Amended Complaint (Doc. #29) is **GRANTED in part and DENIED in part** as set forth above.  Counts III and IV are dismissed with prejudice, while Counts I, II, and V survive to the next stage of litigation.

**DONE** and **ORDERED** in Fort Myers, Florida this 2nd day of March, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record